FILED
2012 Aug-06  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (NORTHEASTERN DIVISION)

| | | |
|---|---|---|
| SHANI LAFEVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | |
| EXPERIAN INFORMATION | ) | 5:12-cv-00591-IPJ |
| SOLUTIONS, INC., *et al,* | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO QUASH
## SUBPOENAS SERVED BY UNIVERSITY OF PHOENIX

COMES NOW the plaintiff, Shani LaFever ("Mrs. LaFever" or "Plaintiff"), by and through the undersigned counsel, and moves to quash the subpoena issued by Defendant University of Phoenix ("Phoenix"), or, in the alternative, limiting the scope of the documents sought from non-parties.

Phoenix's subpoenas described below should be quashed because the subpoenas seek: (1) information that is not relevant to Plaintiff's claims, or Phoenix's defenses; (2) are defective; and (3) are solely meant to harass the plaintiff.

## I.      BACKGROUND

### a.  Nature of the Suit

Plaintiff brings her common law claims against Phoenix relating to two school loans opened by an impostor at Phoenix. (Doc. 1, *Complaint*). The school loans in dispute were opened at Phoenix in February 2011. Mrs. LaFever never applied to or attended Phoenix. (Exhibit A, Depo. Mrs. Lafever, 311-312). Understandably, Mrs. LaFever alleges in Counts Four and Five of her Complaint Phoenix negligently or wantonly: enrolled a person with Plaintiff's personal identifying information; certified fraudulent school loans to the federal government, or Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA"), or both; investigated Plaintiff's identity theft claims; and trained, supervised and/or retained employees responsible for enrollment, financial aid and identity theft investigations. Further, Mrs. LaFever claims Phoenix misrepresented the actions it would take upon receipt of a fraud affidavit from the Plaintiff. *Id*., Count Nine.  Phoenix generally denies all of Mrs. LaFever's allegations, including receipt of an identity theft affidavit from the plaintiff.

### b.  Plaintiff's Standing to Challenge Phoenix's Subpoenas

Plaintiff has standing to challenge Phoenix's subpoenas because the discovery seeks her private information, including her personal identifying information, law enforcement and employment records.  A party may have

standing to object to a subpoena to a non-party when the party has a sufficient privacy interest in the confidentiality of the records sought.  See In re Rule 45 Subpoena Issued to Cablevision Systems Corp., 2010 WL 2219343, *4 (E.D.N.Y. Feb 5, 2010).  In other words, parties' have an interest in avoiding disclosure of private matters.  In re McVane, 44 F.3d 1127, 1136 (2d Cir. 1995).

Phoenix seeks information concerning Ms. LaFever's most private matters, including employment and law enforcement records.  Specifically, Phoenix served nine subpoenas on Friday, August 2, 2012 to:

1. Alabama Department of Corrections;

2. Brenn Distribution, Inc.;

3. Emofins MWG Operon, Inc.;

4. Fayette County Sherriff's Office;

5. Fayette Police Department;

6. Hamilton Police Department;

7. Huntsville Police Department;

8. Madison County Sherriff's Office; and

9. Marion County Sherriff's Office.

Subpoenas 1, 2 and 3 were served on Mrs. LaFever's previous employers.  (Exhibit B, Employment Subpoenas).  The employment subpoenas include a single request:

> All documents or records, including but not limited to, personnel file(s), human resource file(s), employment application(s), references, evaluations, and disciplinary records, relating to or concerning your former employee Shanie Aisha Frazier a/k/a Shanie Aisha ever, whose date of birth is XX/XX/XX.  *Social Security Number will be provided upon request.*

(Exhibit B).   Subpoenas 4, 5, 6, 7, 8 and 9 were served on law enforcement agencies for the counties and municipalities in which Mrs. LaFever was, or is, a resident.   (Exhibit C, Law Enforcement Subpoenas).   The six law enforcement subpoenas request:

> All documents and records, including but not limited to, arrest records, police reports, indictments, probation records, or any other documents relating to or concerning Shani LaFever a/k/a Shani Aisha Frazier, whose date of birth is XX/XX/XX.  *Social Security Number will be provided upon request.*

Thus, Mrs. LaFever has standing to object to the subpoenas because of the confidential information sought by Phoenix concerns Plaintiff.

Although the Federal Rules provide for broad discovery, "[t]o protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena.  FED. R. CIV. P. 45(c)(3)(B).  Further, "[w]hen the burden of a discovery request is likely to outweigh the benefits, FEDERAL RULE OF CIVIL PROCEDURE 26(b)(2)(C) vests the District Court with the authority to limit a party's pursuit of otherwise discoverable information." <u>Board of Trustees of Trucking Employers of New Jersey Welfare Fund v. Caliber Auto Transfer, Inc.</u>, 2011 WL 2670948, *2 (D.N.J. June 30, 2011).  "Despite the relatively

permissive view of relevance by the courts, it is axiomatic that discovery should not be allowed of information that has no conceivable bearing on the case." McKinstry v. IKON Office Solutions, Inc. (N.D. Ga. Civil Action File No. 1:05-CV-3119-CC-AJB, August 10, 2006) citing Six v. Henry, 796 F. Supp. 1448, 1449 (W.D. Okla. 1992).

Here, Phoenix seeks employment records and law enforcement records, which do not have any bearing on the underlying lawsuit and are unlimited in time or scope. In other words, the information sought by Phoenix is no more than a fishing expedition and demonstrative of Phoenix's abusive discovery tactics throughout this litigation. Further, the subpoenas are procedurally defective and solely meant to harass the plaintiff. Thus, the subpoenas should be quashed, or, in the alternative, modified by the Court to limit the scope and time period.

## II.    THE SUBPOENAS ARE IMPROPER BECAUSE THEY SEEK IRRELEVANT INFORMATION

The law enforcement subpoenas seek, without limitation, any and all documents or records pertaining to Plaintiff. Similarly, Phoenix's subpoenas to Mrs. LaFever's employers seek, without limitation, any and all documents or records pertaining to Plaintiff. Phoenix has not demonstrated how the requests could conceivably lead to the discovery of admissible evidence, or any relevance to the Plaintiff's claim of identity theft. Further, Phoenix has made no showing how the information requested pertains to any of its defenses to Counts 4, 5 and 9. Nor

can it logically be asserted that the unrelated employment records or law enforcement records are likely to lead to the discovery of relevant information concerning Phoenix's unlawful conduct.

Specifically, law enforcement records concerning the Plaintiff unrelated to her underlying lawsuit have no bearing on the case at bar. Mrs. LaFever testified of arrests in 2003 in Fayette and Hamilton, Alabama. (Exhibit A, Depo. Of Mrs. LaFever, pp. 86; 96-97). Law enforcement records that do not relate to the underlying lawsuit cannot prove any of Phoenix's defenses or disprove any of Mrs. LaFever's claims. Further, Phoenix knows absent a criminal conviction the evidence of arrests are inadmissible, thus, irrelevant. See F.R.E. 609(a).

Likewise, Mrs. LaFever's employment records are completely unrelated to the instant matter. Mrs. LaFever claims Phoenix negligently enrolled and opened a school loan for an impostor in February 2011. Phoenix's request to Mrs. LaFever's employers pre-dates February 2011. Mrs. LaFever worked at the Department of Corrections for almost six years before she was employed by Operon in 2007 and Qualitest in 2010. (Exhibit A, Depo. of Mrs. LaFever, at 39; 42; and 47). No evidence has been produced in this case to create any causal connection to Mrs. LaFever's claims or Phoenix's defenses with the plaintiff's employment history.

6

Further, Mrs. LaFever claims Phoenix failed to reasonably investigate the fraudulent school loans and misrepresented to her the actions Phoenix would take upon receipt of an identity theft affidavit. Mrs. LaFever's personnel file, human resource file, employment applications, references, evaluations and disciplinary records in no way relate to whether Phoenix, *inter alia*, owed a duty to Mrs. LaFever, or whether Phoenix breached that duty and caused the plaintiff harm. Simply stated, Mrs. LaFever's employment records cannot prove Phoenix's defenses or disprove Plaintiff's claims[1].

To the extent Phoenix can demonstrate the relevancy of its requests, and it cannot, the requests should be limited to information related to the underlying action. BSN Medical, Inc. v. Parker Med. Assoc., LLC, 2011 WL 197217 (S.D.N.Y. Jan. 19, 2011)(allowing subpoena to the extent it sought information related to the underlying action); ACS Consultant Co., Inv. V. Williams, 2007 WL 674608 (E.D. Mich. March 5, 2007)(quashing subpoena seeking overly broad information and advising that new subpoena can be issued with scope limited to the underlying action).

---

[1] Phoenix's motivation for the subpoenas is highly suspect, especially in light of its refusal to produce responsive documents to Plaintiff's discovery request for similar information concerning its employees. Phoenix refuses to produce employment records concerning its employees who enrolled, processed financial aid papers and were responsible for the investigation of Mrs. LaFever's identity theft complaints.  (Exhibit D, Phoenix's Responses to Plaintiff's Request No. 8).

The plaintiff acknowledges that the Huntsville Police Department may have relevant information because Mrs. LaFever filed an incident/offense report with this law enforcement agency concerning her claim of identity theft. The police report was filed with the Huntsville Police Department on June 18, 2011. The Huntsville Police Department assigned Mrs. LaFever's claim with Case Number 201113330. Further, the Huntsville Police Department determined the Alabama law made the basis of Mrs. LaFever's report was ALABAMA CODE §13A-8-192 – Identity Theft.

However, as written, Phoenix's request is unlimited in time or scope and seeks information unrelated to the underlying lawsuit. Phoenix's request should be modified by the Court to limit the time period and scope. For example, the request could be written to seek documents or things relating to Case No. 201113330 filed on June 18, 2011 to the present[2]. As modified, the request would not be objectionable to the plaintiff and may provide relevant information in this matter.

## III.   THE SUBPOENAS ARE PROCEDURALLY DEFECTIVE BECAUSE NOTICE AND DELIVERY WAS NOT PROPER

The subpoenas should be quashed because they were defectively served. The face of the subpoenas indicates Phoenix served them by United States Mail without providing prior notice to Plaintiff. FEDERAL RULE OF CIVIL

---

[2] To the extent the documents relate to an ongoing investigation, the law enforcement records may be subject to privilege. See Spell v. McDaniel, 591 F. Supp. 1090, 1119 (D.C.N.C. 1984).

PROCEDURE 45(B)(1)provides "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then **before it is served**, a notice must be served on each party."(bold supplied).  As noted in the 2007 Amendment to RULE 45, "Courts have agreed that notice must be given 'prior' to the return date, and have tended to converge on an interpretation that requires notice to the parties before the subpoena is served on the person commanded to produce or permit inspection.   That interpretation is adopted in amended Rule 45(b)(1) to give clear notice of general present practice."  FED. R. CIV. P. 45, 2007 Amendment.

Phoenix did not give Mrs. LaFever notice prior to serving the subpoenas. On August 2, 2012, Phoenix served the subpoenas.  (Exhibit B and C).  That ssame day, Phoenix notified Mrs. LaFever's counsel of the subpoenas.  (Exhibit E, Letter to Adkins 8/2/2012).  Therefore, the subpoenas should be quashed because they were impermissibly served at the same time as notice was provided to Mrs. LaFever.   FED. R. CIV. P. 45(b)(1); Faith Satellite Radio, LLC v. Lutheran Church Missouri Synod, 2010 WL 3909467 (D.D.C. Oct. 4, 2010)(quashing subpoena, in part, because issuer's failure to provide proper notice pursuant to Rule 45(b)(1)).

Further, service of the subpoenas via United States Mail was improper. FEDERAL RULE CIVIL PROCEDURE 45(b)(1) provides that service of a

subpoena is effectuated by "delivering a copy to the named person" as required by Rule 45(b)(1). "Service by regular mail, however, is almost always rejected as an effective means of serving subpoenas and courts will quash a subpoena on that basis alone. Duff v. Prison Health Services, 2011 WL 4542507 (M.D. Fla. Sept. 26, 2011).

With one exception, the subpoena to Brenn Distribution, Inc., Phoenix's subpoenas are not addressed to a named person and appear to have been sent by regular U.S. Mail. The subpoenas include a company name or municipality name, but do not identify, by name, the recipient of the subpoena. (Exhibits B and C). Thus, because the subpoenas were not properly "delivered . . . to the named person", they should be quashed for this additional reason.

## IV. THE SUBPOENAS ARE MEANT TO HARASS PLAINTIFF

The sole purpose for the subpoenas is to annoy Mrs. LaFever, to burden her counsel, and to otherwise discourage prosecution of this cause of action. FED. R. CIV. P. 26(b)(1); Alexander v. Rizzo, 50 F.R.D. 374 (E.D. Pa. 1970). "Among the appropriate factors for consideration by the trial court are the following: whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." Bogosian v. Woloohojian Realty Corp., 323 F.3d 55, 66 (1st Cir. 2003);

citing Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 729-30 (8th Cir. 2002);

Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd., 825 F.2d 676, 680 n.2 (2d Cir.

1987).

As demonstrated above, the documents or things requested are not relevant

to any of the claims or defenses in the instant matter.  More disturbing is Phoenix's

continued effort to harass and attack Mrs. LaFever's character despite the fact that

she is a victim of identity theft.  By way of example, during Mrs. LaFever's eleven

hour four-hundred and sixty-two page deposition, Phoenix tirelessly interrogated

Mrs. LaFever about her employment history.  (Exhibit A, Depo. of Mrs. LaFever,

at 39-47).  Specifically,

> Q.   Do you recall the basis for your termination at [Operon
> Biotechnologies and Qualitest Pharmaceuticals]?
>
> A.   At Operon Biotechnologies I was asked to get an abortion - - I was
> pregnant.  I was told by the HR guy to get an abortion.  I would not do it,
> and I was terminated.

(Exhibit A, Depo. of Mrs. LaFever, at 42).  Continuing,

> Q.   And you said that - - I'm sorry to dig into this, but you said that the
> HR manager told you what exactly?
>
> Mr. Adkins:      Object to the form.
>
> A.   To get an abortion.
>
> Q.   To get an abortion?
>
> A.   Yes.

Q.      And why did he tell you to get an abortion?

A.      He was in my business, I guess, because my husband is white.  I don't know.

Mr. Adkins:        Object to the form.

Id.  Dissatisfied with Mrs. LaFever's answer, Phoenix did not let up:

Q.      Did you have any sort of relationship with this HR manager?

A.      No.

Q.      So your testimony is that he just came up to your and said you should have an abortion?

Mr. Adkins:        Object to the form. Her answer is on the record already. This is obviously a personal subject, and it is in no way relevant to this case. We can move on.

Q.      I just want to make sure - - do I have your full testimony on that particular issue?

Mr. Adkins:        Yes.

A.      Yes.

Q.      Did you report this to the HR people at the company?

Mr. Adkins:        (To the witness:)  Answer his question.

A.      No.

Q.      Did you report his conduct to anybody?

A.      No.

Q.      But they terminated you from the job, right?

Mr. Adkins:        Object to the form. Asked and answered ad nauseam.

A.      Yes.

Q.      And I think this is my last question on the subject and then we'll move on.

Mr. Adkins:          I hope it is, because you are border line harassing her at this point.

Mr. Tidmore:        I am not harassing.

Mr. Adkins:          And if you continue down this line of questions, we are going to stop.

Mr. Tidmore:        I just want to make sure I understand.  You are saying that they terminated you because you would not have an abortion?

Mr. Adkins:          (To the witness:)  Don't answer.   She has already testified.  Her answer is what it is.  If you don't understand it or if you don't like it, that is not her problem.  Let's move on.

Mr. Tidmore:        So I just want to be clear.  You are instructing her not to answer my last question?

Mr. Adkins:          No, I'm not instructing her not to answer.

Q.      Well, can you answer the question I asked you a moment ago then we can move on?

Mr. Adkins:          I'm instructing you to discontinue harassing the witness.

Mr. Tidmore:        Mike (*sic*), I don't want to fight with you on the record. I'm not intending to harass the witness.  I would ask that she answer the last questions and we'll move on.

Id., at 43-45.

Phoenix's efforts to intimidate Mrs. LaFever and discourage prosecution of her claims must come to an end.  The Rules do not allow, or condone, such

unrestrained discovery.  The subpoenas should be quashed because they are solely meant to harass the plaintiff.

## V.    CONCLUSION

For the foregoing reasons, Ms. LaFever prays for an Order from the Court granting her Motion to Quash, or, in the alternative, limiting the time period and scope of the information sought from Mrs. LaFever's prior employers and law enforcement agencies.

Respectfully submitted,

<u>**s/ Micah S. Adkins**</u>
Micah S. Adkins (ASB-8639-I48A)
**BURKE, HARVEY & FRANKOWSKI, LLC**
One Highland Place
2151 Highland Ave, Suite 120
Birmingham, Alabama 35205-4008
Telephone:  205-747-1907
Facsimile:   205-930-9054

## **Certificate of Service**

I hereby certify that on the 6th day of August 2012, I served the foregoing Motion to Quash on all counsel of record by filing the same with the CM/ECF system which will provide electronic notice to:

Phil J. Carroll
Ethan Tidmore
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203
*Representing University of Phoenix, Inc.*

Sara Anne Ford
Brian P. Kappel
Lightfoot, Franklin & White, LLC
400 20th Street North
Birmingham, Alabama 35203
*Representing Fed Loan Servicing*

**s/ Micah S. Adkins**
Of Counsel

I hereby certify that on the 6th day of August 2012, I served the foregoing Motion to Quash on the following non-parties by U.S. Mail postage pre-paid:

Alabama Department of Corrections
Attention Custodian of Records
301 S. Ripley Street
P.O. Box 301501
Montgomery, Alabama 36130-1501

Brenn Distribution, Inc.
c/o William Propst, Sr.
301 Meridan Street, Suite 101
Huntsville, Alabama 35801
Eurofins MWG Operon, Inc.
Attention Custodian of Records

2211 Seminole Drive
Huntsville, Alabama 35805

Fayette County Sherriff's Office
Attention Custodian of Records
103 1st Avenue NW
Fayette, Alabama 35555

Fayette Police Department
Attention Custodian of Records
118 1st Avenue NE
Fayette, Alabama 35555

Hamilton Police Department
Attention Custodian of Records
427 James Crump Memorial Drive
Hamilton, Alabama 35570

Huntsville Police Department
Attention Custodian of Records
P.O. Box 2085
Huntsville, Alabama 35804-2085

Madison County Sherriff's Office
Attention Custodian of Records
100 Northside Square
#206
Huntsville, Alabama 35801

Marion County Sherriff's Office
Attention Custodian of Records
280 Winchester Drive
Hamilton, Alabama 35570

**s/ Micah S. Adkins**
Of Counsel